IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| BPS Staffing, Inc., | ) | No. 10 B 17827 |
| | ) | |
| Debtor. | ) | *Hon. Bruce W. Black* |

## MORGAN & BLEY, LTD.'S FIRST AND FINAL FEE APPLICATION

Now come Keevan D. Morgan and Joel E. Blumenfeld of Morgan & Bley, Ltd. (the "Attorneys"), counsel for the Debtor, BPS Staffing, Inc. ("Debtor"), in this matter and hereby submit their First And Final Fee Application (the "Application") for attorneys' fees and reimbursement of expenses pursuant to §330 of the United States Bankruptcy Code (the "Code") and Bankruptcy Rule 2016 for legal services performed during the period April 23, 2010 through May 9, 2011 (the "Application Period"). The predicates for relief requested herein are 11 U.S.C. §§ 105(a), 330, as supported by Rules 2002(a)(6), 2016(a), and 9034(e), and Local Rule 5082-1. The Attorneys' total services rendered a total of $36,029.50, but they are requesting only $29,000.00 (of which there is a balance of $24,000.00) payable over 2 years at roughly $1,000.00 per month. In support of this Application, the Attorneys state as follows:

### §I. Summary Of Results Obtained

1. Under the Attorneys' guidance, the Debtor confirmed a Plan on April 29, 2011.

2. Prior to confirmation, the Attorneys:

(a) Negotiated with the IRS and IDES regarding treatment of their substantial claims under the Debtor's Plan. Although the Debtor was required to pay its largest claimant, the IDES, its entire claim, including penalties and interest within 5 years of the case filing, the Attorneys negotiated a **9 year** payment plan without penalties or interest. Furthermore, although the IRS has apparently adopted a rule of practice in the Northern District of Illinois not to vote on reorganization plans, the

Attorneys obtained support of the IRS on the record regarding confirmation, which allowed the Plan to be confirmed notwithstanding the abstention by the IRS regarding voting.

(b) Successfully negotiated a series of interim cash collateral Orders between the Debtor and its largest secured creditor, Franklin Capital, that enabled the Debtor to obtain financing that was essential to the Debtor's continued operation of its business.

(c) Drafted the Chapter 11 Plan and Disclosure Statement in this matter.

(d) Worked with the Debtor to prepare and submit required operating reports.

### §II. Summary Of Services Rendered

3. On April 21, 2010, (the "Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the Code. Thereafter, on February 7, 2011, the Debtor filed its Plan, which was amended on March 22, 2011 and confirmed on May 2, 2011. Pursuant to Sections 1107 and 1108 of the Code, the Debtor has retained possession of its assets and is thereby authorized to continue the operation and management of its business as Debtor-In-Possession.

4. On June 24, 2010, this Court entered an Order authorizing the Attorneys to represent the Debtor in this matter retroactively, throughout the Application Period.

5. During the Application Period, the Attorneys represented the Debtor in connection with this Chapter 11 case. Specifically, the Attorneys' services comprised of, but were not limited to the following: (a) extensive negotiations with the Debtor's secured creditors regarding court-approved use of cash collateral and acquisition of additional financing, and obtaining extensions of such authority; (b) drafting and revising the Debtor's Chapter 11 Plan pursuant to negotiations with creditors; (c) drafting and revising the Debtor's Disclosure Statement, (d) drafting and serving all creditors and parties in interest with the Debtor's Plan, Disclosure Statement and ballots in connection with confirmation; (e) lobbying for the votes of necessary creditors in furtherance of the

Plan's confirmation; (f) assisting the Debtor with the process of preparing and filing its Monthly Operating Reports. For the Court's convenience, these services have been separated into the categories and are set forth in detail within Section 5 below.

### §III. Additional General Information

6. This is the Attorneys' First and Final Fee Application in this case.

7. The Attorneys previously received a **$4,500.00** retainer in connection with this matter.

8. No agreement or understanding exists between the Attorneys and any other entity for a division of compensation and reimbursement to be received herein or in connection with this case.

9. Several legal professionals employed by the Attorneys performed services regarding this matter. A breakdown of each Attorney's hourly rate and the number of total hours expended thereby in providing legal service is as follows:

| PROFESSIONAL | TOTAL HOURS | FEES AT ATTORNEY RATE |
|---|---|---|
| Keevan D. Morgan | 68.9 @ $435/hr | $29,971.50 |
| Joel E. Blumenfeld | 31.2 @ $195/hr | $5,577.00 |
| Joel E. Blumenfeld | 2.6 @ $185/hr | $481.00 |
| **TOTAL** | **100.1 Hours** | **$36,029.50** |

10. During the Application Period, every reasonable effort was made to have the services rendered to the Debtor performed by the qualified professional charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

11. The Attorneys respectfully submit that their services to the Debtor during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

12. The Attorneys maintain computerized records of the time expended by each Attorney. Such records are attached hereto as **Exhibit A** and are incorporated by reference (the "Billing Statements"). The Billing Statements set forth in detail the services which the Attorneys rendered on behalf of the Debtor, the dates those services were rendered, the nature of the services, the amount of time spent on each task, and the identity of each Attorney who performed such services. The Billing Statements have been edited for privilege purposes. A detailed synopsis of the Billing Statements appears in Section 5 below.

13. The Attorneys also maintained records of all actual and necessary expenses incurred in connection with the services provided to the Debtor, which are included in the Billing Statements. The Attorneys advanced **$119.00** in expenses on behalf of the Estate in connection with the legal services rendered to the Debtor during the Application Period as detailed on the Billing Statements.

### §IV. Standards For Compensation & Compliance Therewith

14. The Court may award a professional person employed under § 327, such as the Attorneys, "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A).

15. Pursuant to Section 330(a)(1)(A) of the Code the court may award, "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by such person, after notice to parties in interest and the United States Trustee and a hearing."

16. The Court may also reimburse a professional person employed under §327 for actual and necessary expenses. Title 11 U.S.C. §330(a)(1)(B).

17. The fees charged by the Attorneys are billed in accordance with the firm's customary billing rates in effect during the period for which compensation is sought. The rates charged by the

Attorneys in this case are the same rates charged for professional services in comparable non-bankruptcy cases, and in fact, based upon the Attorneys' experience, appear to be somewhat lower. Staffing was accomplished efficiently.

18. All professional services and costs were necessary and appropriate to the administration of this bankruptcy case.

19. The Attorneys have sent notice of this Motion in the form attached hereto as **Exhibit B** to all interested parties and the United States Trustee on 21 days notice.

### §V. Categories & Details Of Services Rendered

| Category Name | Description Of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| Admin.341 | Services rendered in connection with the §341 meeting in this case. | 2.3 | $1,000.50 |
| Admin.Creditors | Services rendered with respect to issues concerning Creditors in general. | .4 | $174.00 |
| Admin.Employ | Drafted, revised & submitted a Motion To Employ the Attorneys. | 4.4 | $886.00 |
| Admin.Gen | General administrative services performed on the Debtor's behalf. | 4.8 | $97.50 |
| Admin.Reports | Services rendered with respect to the preparation, filing, execution and review of the Debtor's monthly operating reports. | 2.8 | $1,218.00 |

| Category Name | Description Of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| Admin.Schedules | Services rendered in connection with the preparation, filing and review of bankruptcy schedules and Statement of Financial Affairs in this matter. | .5 | $217.50 |
| Admin.UST | Services rendered with respect to payment of U.S. Trustee's fees. | .1 | $43.50 |
| Cash | Services rendered in connection with the Debtor's Motion for Use of Cash Collateral. | 19.4 | $7,191.00 |
| Claims.American | Services rendered regarding American Express's proof of claim. | .1 | $43.50 |
| Claims.Franklin | Services performed regarding Franklin Capital's claim. | .1 | $43.50 |
| Claims.GE | Services performed regarding GE Money bank's claim. | .1 | $43.50 |
| Claims.Gen | Services performed regarding general claims in this matter. | .3 | $130.50 |
| Claims.IDES | Services rendered in connection with the Illinois Department of Employment Security's claim. | 1.3 | $565.50 |
| Claims.IRS | Services performed in connection with the Internal Revenue Service's claim. | .5 | $217.50 |
| Disclosure | Services rendered with respect to the Debtor's Disclosure Statements. | 9.7 | $4,219.50 |

| Category Name | Description Of Matter | Time Involved | Fees Requested |
|---|---|---|---|
| Plan | Services performed with respect to the Debtor's Chapter 11 Plan in this matter. | 53.3 | $18,169.50 |

**ADMIN.341:** Prepare for preliminary 341 meeting of creditors; Attend preliminary 341 meeting with UST; Attend 341 meeting of creditors and afterwards get the cash collateral order to the Court and meet briefly with the client's principals.

**ADMIN.CREDITORS:** Review emails from clients; Review the August operating Report; Email to IDES and Scott Schreiber regarding order form.

**ADMIN.EMPLOY:** Drafted Motions to Employ for Morgan & Bley, Ltd. and Allan Fridman with corresponding documents and sent same to KDM for review; Emails to KDM regarding employment; Conferences regarding employment Motions and the need to shorten notice periods; revised Motions to Employ and corresponding documents and filed same with the bankruptcy court.

**ADMIN.GEN:** Review UST small business case letter; Meet with clients; Email with clients; emails regarding various UST deadlines and meetings; email regarding general notice provisions in bankruptcy cases; review email from client; research regarding applicable time frames regarding a small business case, and drafted email with a status report of the case and timeline set forth therein; research regarding whether the US trustee's statement in court that a 14 day notice period applied to the notice of final hearing as opposed to the 21 day notice period prescribed by Rule 2002. Attempted to contact the trustee, and drafted an email to KDM on this point; contacted GE Money Bank Sams card several times to attempt to provide them with the requested information and to clarify what their questions; review email from Scott Schreiber regarding employee communications with the IRS; conference with Allan Fridman regarding the need to meet.

**ADMIN.REPORTS:** Review the Debtor's draft first monthly report; review and respond to emal regarding April-May reports; review the amended April-May report; review email from Steve Wolfe regarding overdue reports; review April-June monthly reports; conference with client; emails with clients and co-counsel; review all the filed and to be filed reports; email to client; conference with Steve Wolfe regarding the status of reports and the plan; review September and October reports; review November report; review email from Steve Wolfe regarding the October report; email to Allan Fridman and clients; review email from client; review the December operating report; review the January operating report.

**ADMIN.SCHEDULES:** Conferences with Alan Fridman regarding how the schedules are coming along; review email from Scott Schreiber regarding the amended schedules filed by Allan Fridman; review the Schedules, SOFA and other documents filed.

**ADMIN.UST:** Review email from client.

**CASH:** Conference with Scott Schreiber, counsel for Franklin Capital, the Debtor's primary secured creditor, to explain that the Debtor paid its payroll today out of order and to see how he wants to handle the situation; meeting with client; conferences with Alan Fridman regarding bringing him up to date on the cash collateral issues; first review of the proposed cash collateral order; conference with Scott Schreiber regarding waiver of any conflict regarding him and his firm by the Debtor and its management; conference with Scott Schreiber regarding the cash collateral order; review client's initial projections and revised projections and email to Franklin regarding same; first review of draft cash collateral motion drafted by Scott Schreiber for reason of efficiency; revise Schreiber's initial draft of the cash collateral order and Motion; Email with Scott Schreiber regarding the advance rate to be used in the order; negotiations with Schreiber over the terms of the cash collateral order; email chain and conferences contemporaneously regarding the final revision to the cash collateral Motion and order and filing and service thereof; email chain with clients; email chain with client and conference with Courtroom Deputy regarding entry of the cash collateral Order so that payroll can be funded by Franklin; attend court regarding cash collateral Motion, including a meeting in the attorneys' conference room with Steve Wolfe of the UST's office, counsel for Franklin and the Debtor's representations to negotiate the First Interim Cash Collateral Order; prepare for Court regarding today's cash collateral motions; conference with Shelly DeRousse, one of Franklin's lawyers, and emails regarding the cash collateral order exhibits and funding of the payroll; emails with Scott Schreiber regarding the exhibits to the Order that need to be filed; review email from Scott Schreiber regarding the fact that we will need a second interim order because the UST has not yet held the 341 meeting; review email from client; emails with Scott Schreiber regarding second interim order; conference regarding an agreement for today's final hearing; attended final cash collateral hearing; drafted a notice of final hearing and research regarding the adequacy of same; filed notice of final hearing with the bankruptcy court and related same to the debtor's motion for cash collateral and the second interim order; filed service list regarding notice of final hearing regarding cash collateral; revised motion to shorten notice period and corresponding documents; attend cash collateral hearing. The hearing was short but the call long; emails with client; email to Scott Schreiber regrarding projections and called his assistant when it got bounced back. Scott is out sick and Shelly DeRouse called back for him and will forward the projections to Franklin; review email from Schreiber's office to the Court regarding the new budget; review new cash collateral order; review projections for the first quarter and forward them to Scott Schreiber for use in the cash collateral order; review email from Scott Schreiber regarding the fact that he believes there has been an error with service to the IRS thus far; emails with opposing counsel that she will get the order entered tomorrow and I need not go.

**CLAIMS.AMERICAN:** Review American Express claims.

**CLAIMS.FRANKLIN:** Emails with client.

**CLAIMS.GE:** Review inquiry from GE Money Bank regarding a credit card.

**CLAIMS.GEN:** Review forwarded ECF notice from Allan Fridman regarding a proof of claim; review email from client regarding end of year 2010 statements; review new claims by unsecured creditors for $9,000.00

**CLAIMS.IDES:** Fax to Mr. Corcoran at the IDES regarding power of attorney so that possibly we can meet over the situation; conference with client; conference with Richard Grenvich at IDES regarding whether a compromise on the taxes possibly can be reached; conference with Mr. Grenvich at the IDES regarding whether interest might be compromised; apparently, no penalties were charged; review fax from Mr. Grenvich at IDES regarding when interest portion of its claim is subject to reduction; call to Newbold's office and left message regarding meet and email to him regarding same; email to James Newbold at the attorney general's office regarding a possible meeting about the IDES claim; review email from client regarding meeting; reviewed emails from client regarding IDES assessments; email with client regarding IDES claims.

**CLAIMS.IRS:** Review email from client regarding IRS and IDR claims; review amended IRS POC for $19K; review email from client regarding IRS claim; emails with IRS counsel regarding the Plan and IRS claims.

**DISCLOSURE:** Review email from client; work on disclosure statement; conference with client regarding projections; continue to draft disclosure statement; email to Scott regarding disclosure statement as it concerns Franklin Capital; review the again revised projections; conference with client; review documents regarding disclosure statement drafting; emails with Steve Wolfe at the UST's office regarding the disclosure statement; made modification to disclosure statement for filing and get it filed with the court; conference with client; review new projections; work on amended disclosure statement.

**PLAN:** Get the plan on file; review email from Scott Schreiber regarding what is the debtor's exit strategy; conference with client; conference with Scott Schreiber regarding cash collateral order to be entered; meet regarding drafting of Plan; review email from client; reviewed amended schedules for purposes of determining class breakdown; worked on drafting a shell plan on behalf of the debtor; completed draft of BPS shell plan.; review projected budgets and operating reports and analyzed same in context of the plan; revised draft plan; email to KDM regarding operating reports; continued drafting plan; meeting with clients; conference with client; conference with Scott Schreiber regarding a possible cram-down plan; research regarding whether a cram-down plan can work if the taxes are not paid in full under new value exception; generated a new value plan outline based upon the results of my research with respect to the plan implementation; worked on revising plan in light of tax issues, today's conference with KDM and research regarding new value exception; research regarding new value and confirmation in connection with the debtor's revised plan; reviewed the docket, final cash collateral order and monthly operating reports filed to date regarding the revised plan; revised plan and re-submitted same to KDM for review; review emails from client; conference regarding the specifics of new value research and email to KDM regarding same in the form of a short memorandum; review cases regarding new value exception to the absolute priority rule or corollary to it; conferences with client; review client emails; conference with Jim Newbold at the Illinois Attorney General Office regarding a possible appeal on the other workout of the tax issue; conference with and client regarding meeting; emails with client regarding IDES meeting possibilities; email to client; review plan as drafted so far to determine what modifications may be acceptable to creditors; re-work the plan for set payment for a set period of time; finish first draft of plan for review by client for filing; email to Steve Wolfe and Scott Schreiber regarding plan and disclosure statement; email to Steve Wolfe at UST's office regarding

status; research regarding substantial consummation regarding projected costs of UST fees post-confirmation; revise plan; emails to/from Scott Schreiber regarding plan; conference with Corcoran at the IDES regarding a possible meeting with the attorney general regarding the plan; drafted a motion to extend confirmation period pursuant to Section 1121(e)(3) and research in connection with same; research regarding the applicable notice period and email to KDM regarding same; reviewed email from KDM regarding the need to hold off on this project; review email from client; conference with Mr. Grenvich; conferences with Steve Wolfe regarding plan dates; prepare for meeting with IDES; conference with Steve Wolfe at UST regarding meeting with IDES today; conference with Roger Silber at IRS regarding the IRS claims; conference with clients; meet with various IDES representatives at their counsels' office and with clients regarding the IDES claim and the plan; draft and get filed motion and proposed order to extend the confirmation date; conference with assistant attorney general Richard Grenvich, who says that although he is still awaiting official word from the IDES director, I may state to the Court in a motion that we have a deal; amend plan; complete draft of amended plan and email to Grenvich, the IDES assistant; court appearance regarding motion to extend plan and other dates; prepare for court appearance regarding motion to extend plan and other dates; review and revise motion to exclude the paid employees from the notice list for the plan and disclosure statement; drafted a motion to exclude unimpaired wage claimants from service list, revised same pursuant to KDM's instructions, drafted additional documents in connection with same, prepared motion and related documents for filing and filed same with the bankruptcy court; meet with staff regarding service of the plan; revise notice of creditors regarding plan; attend court regarding motion to delete employees from the service list; revise ballot; prepare for court regarding motion to remove paid employees from the service list and cash collateral status; review Data Integrity ballot and confer with client regarding same; another call to IRS agent who filed her claim regarding a ballot and had to leave message again as no answer; conference with Ms. Reed at IRS regarding ballot and plan; conference with Ms. Becka Djucovic at IRS regarding ballot and plan; conference with Robert Romashko, IRS counsel, regarding explaining the Plan and he will see if they will vote at all and get back to me-I asked if he would vote but did not solicit a vote for or against a disclosure statement has not been approved; email with Bob Romashko at IRS regarding my conference with Ms. Reed at the IRS and what the IRS might want to touch up in the plan; reviewed and analyzed ballots in this matter. Drafted and filed a ballot report pursuant to KDM's instructions; email to Mr. Romashko, IRS counsel, regarding new plan provisions made per the IRS's request; preparation for confirmation hearing; revise plan per requests of IRS; prepare for today's confirmation/disclosure statement hearing; draft order confirming plan and approving disclosure statement; attend court regarding plan confirmation and disclosure statement approval-the disclosure statement was approved and the plan confirmed.

20. All of the above referenced tasks directly benefitted the Estate, by permitting the Debtor to reach a compromise with its largest secured creditor, Franklin Capital, to confirm the Debtor's Plan of Reorganization and obtain approval of its Disclosure Statement.

21. During the Application Period, the Attorneys also prepared the instant Fee Application, which is required under Title 11 for compensation of professionals retained by the Estate.

22. The foregoing professional services and costs were necessary and appropriate to the administration of this bankruptcy case. The professional services performed were in the best interests of the creditors and parties in interest, and were provided without unnecessary duplication of effort or expense incurred by other professionals involved in the case. Compensation for the services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved.

23. The professional services were performed expeditiously and efficiently. The Attorneys have exercised good faith in billing judgment, and has not sought compensation for "excessive, redundant, or otherwise unnecessary" time. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40 (1983).

24. Clearly, the Attorneys should be awarded the amount requested. Not only did the Attorneys undertake the work with the good faith hope of reorganizing the Debtor and ensuring compensation for all creditors herein, the Attorneys were able to secure a favorable result with respect to the same. Consequently, since the Attorneys have assisted administration of the estate to the extent that it is likely all Creditors will receive more than they would have absent the Debtor's reorganization, the Attorneys deserve compensation for their services.

**§VI. Services Rendered, Time Involved, And Compensation And Costs Requested**

25. The Attorneys represented the Debtor in this matter on an hourly basis, as set forth fully in **Exhibit A**.

26. Based upon the foregoing, the Attorneys request compensation in the amount of **$36,029.50**.

27. Furthermore, the Attorneys incurred **$119.00** in costs connected to the administration of this case, and respectfully request reimbursement for the same. An itemized statement of costs incurred is also included at the end of the Billing Statements attached hereto as **Exhibit A.**

28. Moreover, the attorneys have rendered services and advanced costs totaling **$36,148.50** in this case.

29. Notwithstanding the foregoing, the Attorneys have voluntarily agreed to reduce their fees and costs to a total of **$28,699.00**, payable in monthly installments for a period of twenty-four (24) months in order to accommodate the Debtor's budget. This will save the Debtor **$7,449.50** in absolute dollars as well as not burden the Debtor with a large administrative cost immediately upon confirmation. Consequently, the Attorneys are respectfully requesting a total of **$28,699.00** for their fees and costs in connection with their representation of the Debtor in this Chapter 11 case, with respect to which a balance of **$24,119.00** remains.

Wherefore, Keevan D. Morgan and Joel E. Blumenfeld of Morgan & Bley, Ltd. respectfully apply to the Court for an award of fees and costs in the total amount of **$28,699.00**, with respect to which a balance of **$24,119.00** remains, for an Order authorizing and directing the Debtor to make equal monthly installment payments on the remaining balance for a period of twenty-four (24) months, and for all other and further relief in their favor as this Court deems fair and just.

Morgan & Bley, Ltd.

By: /s/ Keevan D. Morgan

Keevan D. Morgan
Joel E. Blumenfeld
Morgan & Bley, Ltd.
900 West Jackson Blvd.
Suite 4 East
Chicago, Illinois 60607
312.243.0006